# EXHIBIT A

Form CA 1-A: Notice and Acknowledgment for Service by Mail



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

Catherine Nugent
_____
*Plaintiff(s)*

v.

Case No: 2014 CA 001091 B
_____

National Public Radio, Inc.
_____
*Defendant(s)*

### NOTICE

To (insert name and address of the party to be served):
National Public Radio, Inc.
_____
c/o Beverly Davis
_____
1111 North Capitol Street
_____
Washington, DC 20002
_____

    The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

    You must sign and date the Acknowledgement (below). If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate next to your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate next to your signature your authority.

    If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

    If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

    This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date): 2/24/14 .

_____
*Signature*

2/24/14
_____
*Date of Signature*

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, AND INITIAL ORDER

    I (print name) _____ received a copy of the summons, complaint and initial order in the above captioned matter at (insert address): _____
_____
_____

_____
*Signature*

_____
*Relationship to Defendant/Authority to Receive Service*

_____
*Date of Signature*

Para pedir una traducción, llame al (202) 879-4828

Để có một bài dịch, hãy gọi (202) 879-4828

如需翻译,请打电话 (202) 879-4828

የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

Veuillez appeler au (202) 879-4828 pour une traduction

번역을 원하시면, (202) 879-4828 로 전화주십시오



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

CATHERINE NUGENT
    Vs.                                    C.A. No.      2014 CA 001091 B
NATIONAL PUBLIC RADIO, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge BRIAN F HOLEMAN
Date:  February 24, 2014
Initial Conference: 9:30 am, Friday, May 30, 2014
Location:   Courtroom 214
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."  D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC.  Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation.  D.C. Code § 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office.    The   forms   to   be   used   for   early   mediation   reports   are   available   at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Catherine Nugent
_____
                                    Plaintiff

vs.                                                  14 - 0 0 0 1 0 9 1

                                    Case Number  _____

National Public Radio, Inc.
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Linda M. Correia_____                        _Clerk of the Court_
Name of Plaintiff's Attorney

_Webster, Fredrickson, Correia & Puth PLLC_    By _____
Address                                                    Deputy Clerk

_1775 K Street, NW, Suite 600_____

_Washington, DC 20006_____      Date ___02/24/2014_____
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ተርጓሚ ለማግኘት፣ (202) 879-4828 ይደውሉ።

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

CATHERINE NUGENT )
9815 Summit Avenue )
Kensington, MD 20895 )
)
Plaintiff, )
)
v. )   Civil Action No. 14 - 0 0 0 1 0 9 1
)   Judge
NATIONAL PUBLIC RADIO, INC. )
1111 North Capitol Street, SE )   **Jury Demanded**
Washington, D.C. 20002 )
)
Defendant. )
)

RECEIVED
Civil Clerk's Office
FEB 24 2014
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT
**(Disability Discrimination and Failure to Accommodate in Violation of the District of
Columbia Human Rights Act, and Negligent Misrepresentation)**

COMES NOW the Plaintiff, Catherine Nugent, by and through her attorneys, Webster,

Fredrickson, Correia & Puth, PLLC, and for her Complaint in the above-captioned action states

to this Honorable Court as follows:

### PARTIES

1.      Plaintiff Catherine Nugent is an adult female resident of the State of Maryland.

Plaintiff was an employee within the meaning of D.C. Code § 2-1401.02(9) (2013).

2.      Defendant National Public Radio, Inc. ("NPR"), is authorized to conduct business

in the District of Columbia, and is an employer within the meaning of D.C. Code § 2-

1401.02(10) (2013).

### JURISDICTION

3.      Jurisdiction is founded upon D.C. Code § 2-1403.16 (2013).

4.     Venue is proper as all of the acts complained of herein occurred in the District of Columbia.

## FACTS GIVING RISE TO RELIEF

5.     Plaintiff is Deaf and relies upon American Sign Language (ASL) to communicate. She is a full-time student at Gallaudet University in the District of Columbia.

6.     On or about April 16, 2013, Anjali Desai-Margolin, a career center counselor at Gallaudet sent Plaintiff an email announcing a paid internship opportunity at NPR for a Gallaudet student. Ms. Desai-Margolin encouraged Plaintiff to apply for the position which she promptly did on April 18, 2013. NPR knew that Plaintiff was Deaf, since it sought students from Gallaudet University which holds itself out as a leader in educating the Deaf.

7.     The announcement held out the following opportunity: "NPR is very interested in interviewing Gallaudet students for Communications & Marketing Internships." "The successful candidate would assist in the planning and development of activities designed to increase awareness of the Public Radio Satellite System and NPR Labs among the widest possible audience, and strengthen the image of both organizations across public radio. The intern will support the Distribution Division's Marketing Communications team. Communications, marketing, or public relations major with social media and web-development experience preferred. The ideal candidate will have a track record of successful internships with a focus on marketing and communication. Solid writing skills, knowledge of Drupal and HTML (preferred); MS Office Suite (Access, Excel, PowerPoint, and Word) are required."

8.     At the time the position was posted, the NPR website held out the chance for "an internship like no other." It offered that "NPR interns play a vital role in NPR's daily operations in almost every division of the organization - from NPR News and Music, to Communications

and the Office of the General Counsel. Our interns work alongside experienced staff members to gain unparalleled experience in their chosen field and contribute their talents and energies to NPR's mission."

9.     Plaintiff is a business administration major with concentrations in marketing and human resource management. After taking a variety of classes, Plaintiff enjoyed marketing the most and hoped to develop more familiarity with marketing through the NPR internship.

10.     On or about April 29, 2013, Plaintiff interviewed for the position with NPR Enterprise Strategies and Planning Manager Maryfran Tyler via telephone using a sign language interpreter, Karen Cook, the interim director of the career center at that time.  Ms. Cook was present with Plaintiff to give voice to Plaintiff's signing. Plaintiff had been referred to Ms. Tyler by Anjali Desai-Margolin, the aforementioned career center counselor at Gallaudet. Ms. Tyler offered Plaintiff the job during the course of the telephonic interview.

11.     During the interview, Ms. Tyler told Plaintiff that she would be working in NPR's Distribution Division. Ms. Tyler did not mention that Plaintiff would be teaching ASL classes during the interview process.

12.     The day after her interview, Ms. Desai-Margolin informed Plaintiff that she intended to contact the Gallaudet Public Relations department so that they could make a short film about Plaintiff's internship experience at NPR.

13.     On or about June 3, 2013, Plaintiff began work as a paid intern at NPR.

14.     Prior to the commencement of the internship, in an email on May 7, 2013, Ms. Tyler asked Plaintiff if she could give her (Ms. Tyler) information about the telecommunications technologies Plaintiff used to assist in communications.

15.     Plaintiff indicated in response that voice recognition software would be "very

3

helpful this summer," and that video phone programming would help her with communications. Plaintiff also suggested that she would be fine working with Apple products.

16.    Once the internship began, Ms. Tyler gave Plaintiff an Apple iPad and said Plaintiff could use it to communicate with her and other staff by text. However, during daily meetings Ms. Tyler only talked or attempted rudimentary signs, even though Plaintiff had brought the iPad with her to facilitate communication, per Ms. Tyler's instructions. Eventually Plaintiff stopped bringing the iPad to daily meetings since it was never used. Accordingly, Plaintiff was unable to follow the discussions at these meetings without an ASL interpreter. Instead, she had to rely on the haphazard interpreting efforts of a co-intern, Lindsay Boxrud, as described more fully below.

17.    Plaintiff was never presented with the opportunity to utilize video phone services for incoming or outgoing calls during the internship.

18.    Although Defendant initially raised the possibility of voice recognition software prior to Plaintiff beginning the internship, voice recognition software was ultimately never offered by Defendant.

19.    NPR did not adequately facilitate day-to-day communications between NPR's "experienced staff members" and Ms. Nugent.

20.    Plaintiff's first day at NPR consisted of a day-long orientation for all interns, for which two ASL interpreters were provided by the Gallaudet Interpreting Service.

21.    On her second day on the job, which was her first real day at her daily work location, Plaintiff did not have an ASL interpreter. Plaintiff's co-intern attempted to interpret for her during a tour of the office and for introductions to employees, but Plaintiff could only communicate through her co-intern. As discussed below, this manner of interpreting was totally

4

inadequate.

22.     Also on her second day, Plaintiff asked in an email to Ms. Tyler if she needed to attend a brown bag lunch to which all interns had been invited, and whether an ASL interpreter would be provided. Ms. Tyler informed Plaintiff that this was not a "critical" meeting for her attend.

23.     On her third day, Ms. Tyler informed Plaintiff by email that ASL interpreters would only be provided at two NPR events in June. Because of a lack of daily ASL interpreting services, Plaintiff knew she would be unable to regularly interact with NPR staffers from whom she had been told she would learn.

24.     Plaintiff was willing to try this arrangement, believing that it might work for a "marketing position." Plaintiff believed that if she were assigned projects to work on independently on her computer, regular interpreter services may not be needed. However, this was not to be the nature of Plaintiff's work for Defendant.

25.     Plaintiff's actual work assignments were substantially different from the expectations Defendant created through the materials it held out to prospective interns like Plaintiff and what was stated to her in e-mails after Plaintiff was hired.

26.     Although Plaintiff believed based on NPR's representations that she would be accruing substantive and topical subject-area experience in the fields of marketing and communications, she learned that, instead, she would be tasked with developing lesson plans for, and teaching, a summer-long daily ASL class for NPR staff.

27.     Plaintiff was not told that she would be doing ASL instruction until after she had been hired, and, even then, she was initially told only that she would be "developing some" ASL classes which Plaintiff thought would be of an informal and conversational nature.

28.     Plaintiff was never told that her marketing and communications internship would require her to develop a daily regimen of formal hour-long sessions to teach ASL to Ms. Tyler and other staff.

29.     Plaintiff has limited experience teaching ASL and is not trained or certified in ASL instruction or interpreting. Plaintiff did not take the internship position at NPR to take on ASL teaching responsibilities.

30.     From the outset of her employment, Plaintiff was required to develop a daily regimen of formal hour-long sessions to teach ASL to Ms. Tyler and other staff. She spent the majority of her time preparing lesson plans and teaching daily hour-long ASL classes.

31.     Because she did not have an ASL interpreter and was misled about the requirements of her internship, Plaintiff quickly felt isolated and demeaned.

32.     When Plaintiff realized what her actual job would be, it became obvious that she needed an ASL interpreter every day, because she was interacting with hearing people and needed to be clearly understood.

33.     Plaintiff would never have accepted a job teaching ASL to hearing people without an ASL interpreter.

34.     NPR had hired another deaf student, Lindsay Boxrud, as an intern, and assigned Plaintiff and Ms. Boxrud to teach the ASL class together. Ms. Boxrud does not attend Gallaudet University. Ms. Boxrud is able to speak. She has some hearing and does not sign in "pure ASL," but rather uses a different version of communication involving a mixed bag of signing and talking. The difference between ASL, the recognized and official language of the Deaf in this country and Ms. Boxrud's mode of communication was such that she was periodically instructing NPR staff using incorrect signs. Without an ASL interpreter available to provide

6

Plaintiff's corrections, Plaintiff had to sit in mute witness to Ms. Boxrud's erroneous instruction of Plaintiff's native language. These distinctions meant that NPR employees in the ASL classes looked to Ms. Boxrud for guidance, effectively eliminating Plaintiff from having any meaningful participation in the ASL class which she had been assigned to help teach.

35.     Instead of assigning Plaintiff a certified full-time ASL interpreter, and instead of discussing the matter with Plaintiff, NPR expected Plaintiff to communicate through Ms. Boxrud.

36.     Ms. Boxrud inadequately communicated for Plaintiff. Ms. Boxrud selectively decided what information to share with Plaintiff and did not relay Plaintiff's complete responses back to the staff. Ms. Boxrud was not an ASL interpreter. As mentioned above, on many occasions, Ms. Boxrud used incorrect ASL signs for words.

37.     Rather than being an ASL interpreter, Plaintiff uses the term "screener" to describe the way that Ms. Boxrud inadequately facilitated and selectively filtered communications and interactions between Plaintiff and other NPR staff.

38.     If NPR had not refused to provide Plaintiff with appropriate ASL interpreter services as Plaintiff obviously needed, Plaintiff would not have been forced to accept Ms. Boxrud's role as her screener.

39.     Plaintiff's isolation was complete when on or about June 12, 2013, Ms. Tyler asked Ms. Boxrud to take two ASL interpreters from Gallaudet on a tour of the new NPR offices. Ms. Boxrud did not invite Plaintiff, leaving her alone at her desk even though the ASL interpreters were on site specifically to serve Plaintiff's communication needs.

40.     Plaintiff was not provided with an ASL interpreter for brown bag lunches, ASL classes she was teaching, staff meetings, meetings with her supervisor, or day-to-day interactions

7

with staff.

41.     Regarding Plaintiff's access to ASL interpreters, NPR set clear expectations at the beginning of the internship. Plaintiff asked about an ASL interpreter during her second day on the job, and was informed that because Ms. Tyler did not believe that the meeting about which Plaintiff had inquired was "critical," Plaintiff would effectively be excluded from participation. At the outset of her internship, then, Ms. Tyler communicated to Plaintiff that no ASL interpreters would be available to her, unless she was to be attending what Ms. Tyler deemed to be a "critical meeting."

42.     On or about June 11, 2013, Ms. Tyler informed Plaintiff that Gallaudet would be coming to NPR soon to film Plaintiff working at NPR. Ms. Tyler also informed Plaintiff and Ms. Boxrud that Ability Magazine, a publication for the disabled community, would be coming to NPR to interview them for a story on their internship experience.

43.     Plaintiff's internship coincided with NPR's efforts to promote its "Breaking the Sound Barrier" project, an effort to bring captioned radio programs to the attention of the Deaf community.

44.     Plaintiff came to understand that NPR's primary reason for employing Plaintiff was to assist in its public relations strategy to build enthusiasm in the media for its new outreach programming targeting Deaf persons. NPR failed to meet its legal obligations in focusing almost exclusively on this purpose for employing Plaintiff, to Plaintiff's detriment.

45.     On or about June 13, 2013, Plaintiff's parents reached out to Ms. Tyler to voice Plaintiff's complaints as articulated above, because it was clear that Plaintiff could not communicate with Ms. Tyler without the assistance of Ms. Boxrud, and that Plaintiff had been misled about the purposes of her employment.

8

46.     On or about June 14, 2013, Ms. Tyler terminated Plaintiff's employment with NPR following the email exchange with Plaintiff's parents.

47.     When Plaintiff's parents explained that Plaintiff wanted to keep her job, an NPR human resources representative emailed Plaintiff's parents and said that NPR would "stand by the decision" to terminate Plaintiff.

48.     Plaintiff had previously interviewed for a paid summer internship position at the Finance Office of Gallaudet University, and had received an offer for that position. Plaintiff passed up that offer in favor of the NPR internship.   On or about June 19, 2013, Plaintiff contacted the Internship Coordinator at Gallaudet's undergraduate Business School to see if other summer internship opportunities were available. In response, Plaintiff was informed that all such opportunities had been filled.

49.     As part of her degree requirements, Plaintiff must serve in a business-related internship of at least ten (10) hours per week for at least 10 weeks.   The loss of the NPR internship has hampered Plaintiff's progress toward the timely attainment of her diploma.

## COUNT I
### (Failure to accommodate disability in violation of the District of Columbia Human Rights Act)

50.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-49 of this Complaint with the same force and vigor as if set out here in full.

51.     Plaintiff is Deaf.

52.     Plaintiff was qualified to perform the essential functions of an internship position with Defendant with the reasonable accommodation of daily interpreter services.

53.     Defendant was aware that Plaintiff was Deaf since it recruited her from a college for persons who are deaf. Defendant also was aware that Plaintiff was Deaf since it interviewed

9

her for the position via telephone with a sign language interpreter who was present to give voice to Plaintiff's signing.  Plaintiff's needs were obvious before she was hired, *see McCoy v. Texas Dept. of Criminal Justice*, No. C-05-370, 2006 U.S. Dist. LEXIS 55403, 2006 WL 2331055, *7-9 (S.D. Tex. Aug. 9, 2006).

54.     Plaintiff also requested an interpreter as an accommodation on her second day on the job.

55.     Plaintiff's request for accommodation was denied.

56.     Defendants failed to reasonably accommodate Plaintiff's disability, deafness, in violation of D.C. Code § 2-1402.11 of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 - 1411.06 (2001).

57.     As a direct and proximate result of these unlawful acts by Defendants, Plaintiff has suffered lost wages, benefits and entitlements, and has suffered and continues to suffer humiliation and emotional distress.

## COUNT II
### (Negligent misrepresentation)

58.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-49 of this Complaint with the same force and vigor as if set out here in full.

59.     Defendant NPR negligently communicated false information about its internship program to Plaintiff, to wit, Defendant held out its internship program as an experiential learning opportunity in the area of marketing and communications, where it instead actually intended to have Plaintiff instruct NPR employees in ASL and serve as a component of its media outreach strategy.

60.     Defendant should have recognized that Plaintiff would likely be harmed by

10

relying on Defendant's misrepresentation.

61.     By choosing to apply for the position based on the false information in NPR's internship solicitations, and subsequently accepting the position based on additional misrepresentations made by Ms. Tyler, Plaintiff reasonably relied upon the false information.

62.     Plaintiff was harmed by her reliance on this false information as articulated above.

63.     As a direct and proximate result of these unlawful acts by Defendants, Plaintiff has suffered lost wages, benefits and entitlements, and has suffered and continues to suffer humiliation and emotional distress.

*   *   *

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

1.     Enter judgment on her behalf against National Public Radio, Inc., on all counts contained herein;

2.     Award Plaintiff compensatory and other damages;

3.     Award back pay to Plaintiff;

4.     Award punitive damages to Plaintiff;

5.     Award Plaintiff her court costs, expenses, attorneys' fees, prejudgment interest, and post-judgment interest;

6.     Declare that Defendants' conduct is in violation of the District of Columbia Code §§ 2-1401.01 - 1411.06 (2013);

7.     Declare the Defendants' conduct negligent misrepresentation; and

8.     Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Catherine Nugent

WEBSTER, FREDRICKSON, CORREIA & PUTH PLLC

Linda M. Correia #435027
1775 K Street, N.W.,
Suite 600
Washington, D.C. 20006
(202) 659-8510

Attorney for Plaintiff

<u>VERIFICATION</u>

I, Catherine Nugent, being duly sworn on oath, do hereby state that I have read the foregoing Complaint and that it is true to the best of my knowledge, information, and belief.

_____
Catherine Nugent

Subscribed and sworn to before me
this 21 day of February , 2014.

_____
Notary Public

My Commission Expires:   **Sheri L. Williams**
**Notary Public, District of Columbia**
**My Commission Expires 2/28/2014**



**JURY DEMAND**

Plaintiff demands a trial by jury on all issues contained herein.

_____
Linda M. Correia #435027
1775 K Street, N.W.
Suite 600
Washington, D.C.  20006
(202) 659-8510
Attorney for Plaintiff

13

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| CATHERINE NUGENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2014 CA 001091 B |
| | ) | |
| NATIONAL PUBLIC RADIO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF CATHERINE NUGENT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO NATIONAL PUBLIC RADIO, INC.

TO:   National Public Radio, Inc.
c/o Beverly Davis
1111 North Capitol Street, SE
Washington, DC 20002

## <u>INSTRUCTIONS</u>

The following requests for production are propounded pursuant to Rule 34 of the Rules of Civil Procedure of the District of Columbia Superior Court. Plaintiff Catherine Nugent requests that Defendant National Public Radio, Inc., produce and permit inspection and copying of the documents identified below, at the law offices of Webster, Fredrickson, Correia & Puth, 1775 K Street, N.W., Suite 600, Washington, D.C. 20006, on any normal business day between the hours of 9:00 a.m. and 12:00 p.m., within forty-five (45) days of service. **In addition, Plaintiff requests that Defendant National Public Radio, Inc. make available for inspection, at a mutually convenient time, all original documents responsive to these document requests.**

As used herein, the term "document" or "documents" means all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason

of any notation made on such copies or otherwise. The term "document" or "documents" includes, without limitation, correspondence, electronic mail, electronically stored information (ESI) affidavits, depositions, factual narratives, contracts, reports, memoranda, notes, studies, checks, statements, questionnaires, receipts, returns, summaries, pamphlets, books, inter-office and intra-office communications, offers, notations of any sort of conversations or interviews, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets, and all models, drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or aural records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilms, videotape, records, and motion pictures) and digital, electronic, mechanical, or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, and recordings). Two or more copies of a document bearing divergent handwritten or other notations shall be treated as separate documents for this purpose.

**Plaintiff requests that all non-electronic documents be produced in .pdf format. Plaintiff requests that all ESI produced in response to these requests be preserved and produced to Plaintiff as converted to searchable .pdf documents and that they be preserved in their native electronic format, including all metadata, as necessary for forensic examination during the pendency of the case.**

As used herein, "you," "your," or "NPR" refers to National Public Radio, Inc., including its employees, former employees, agents, representatives, and any predecessors in interest.  Unless otherwise specifically noted, all documents under the control of NPR are requested, whether the documents were generated by NPR, its predecessors in interest, employees, former employees,

2

agents, representatives or any other person or entity.

Pursuant to Rule 34, the documents responsive to each request should be identified specifically and separated by a sheet of paper containing the document request number to which they respond. These requests for production are continuing in character, requiring you to provide promptly additional or updated information when such information becomes known to you.

## REQUESTS FOR PRODUCTION

1.  All documents in any personnel file referring or related to Catherine Nugent and all documents and in any file not referred to as a "personnel file" related to Ms. Nugent's employment with Defendant.

2.  All documents referring or related to the advertisement, promotion, or description of NPR's intern opportunities in the D.C. area, from January 1, 2012 to the present.

3.  All documents indicating NPR's knowledge of Plaintiff's disability.

4.  All documents referring or related to promotion, marketing, public relations, or communications aspects of the Public Radio Satellite System, NPR Labs, and the "Breaking the Sound Barrier" project.

5.  All documents referring or related to filming, transcribing, recording, reporting, or otherwise publicizing Plaintiff and/or Ms Boxrud's internship experience at NPR.

6.  All documents reflecting communication between NPR and any office of Gallaudet University, from January 1, 2012 to the present.

7.  All documents reflecting communication to and from Plaintiff, and to and from Lindsey Boxrud, from the start of the interviewing process to the termination of the

3

internship.

8. All documents referring or related to the contemplation, design, and implementation of NPR's program for teaching employees American Sign Language (ASL) in 2013.

9. All documents referring or related to Plaintiff or Lindsey Boxrud.

10. All documents referring or related to the decision to terminate Catherine Nugent's employment.

11. All documents concerning or related to the income, payroll, 401k, fringe benefits (including, but not limited to, vacation, insurance, sick leave, or leaves of absence) afforded or available to Defendant's employees during the tenure of Catherine Nugent's employment.

12. All documents reflecting any custom, policy and practice created or used by Defendant to prohibit workplace discrimination and produce each document that reflects or relates to such custom, policy or practice.

13. All documents reflecting or relating to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action against you or any party to this action or to indemnify or reimburse you or any party to this action for payments made to satisfy the judgment, whether or not such coverage has been granted or denied.

14.   All documents that tend to support, relate to, or refute the denials and each defense

asserted in your Answer.

Respectfully submitted,

WEBSTER, FREDRICKSON, CORREIA & PUTH, PLLC

Linda M. Correia, # 435027
1775 K Street, Suite 600
Washington, D.C.  20006
(202) 659-8510
Lcorreia@wfcplaw.com

Attorney for Plaintiff

5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 24<u>th</u> day of February, 2014, a copy of the foregoing Plaintiff Catherine Nugent's First Requests for Production of Documents to National Public Radio, Inc. was sent along with the Complaint via Certified Mail to:

    National Public Radio, Inc.
    c/o Beverly Davis
    1111 North Capitol Street, SE
    Washington, DC 20002


                        _____
                        Linda M. Correia # 435027
                        Webster, Fredrickson, Correia & Puth P.L.L.C.
                        1775 K Street, N.W.
                        Suite 600
                        Washington, D.C. 20006
                        (202) 659-8510

                        Attorney for the Plaintiff

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| CATHERINE NUGENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 2014 CA 001091 B |
| | ) |
| | ) |
| NATIONAL PUBLIC RADIO, INC., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF CATHERINE NUGENT'S FIRST SET OF INTERROGATORIES
## TO NATIONAL PUBLIC RADIO, INC.

TO:    National Public Radio, Inc.
        c/o Beverly Davis
        1111 North Capitol Street, SE
        Washington, DC 20002

### INSTRUCTIONS

The following interrogatories are propounded pursuant to Rule 33 of the Rules of Civil Procedure of the District of Columbia Superior Court.  Each interrogatory must be answered fully, under oath, and in writing within forty-five (45) days of service.

As used herein, the term "identify" or "identity" when used in conjunction with a person means to state the person's (1) full name, (2) last known residence and business addresses, (3) last known home and business telephone numbers, (4) gender, and (5) job title.  When used in conjunction with a document, the term "identify" means to state (1) the title of the document, (2) the date of the document, (3) the author of the document, and (4) the name and business address of the present custodian of the document.

As used herein, "you," "your," or "NPR" refers to Defendant National Public Radio, Inc.,

including its employees, former employees, agents, representatives, and any predecessors in interest. These Interrogatories are continuing in character, requiring you to provide promptly additional or updated information when such information becomes known to you.

## INTERROGATORIES

1. Identify each person who has knowledge of facts set forth in the Complaint or your Answer and any Defenses asserted therein by Defendant, and, for each person, state the substance of that person's knowledge.

2. Identify each person with knowledge of and state with particularity and in detail all steps taken by Defendant with respect to Catherine Nugent's requests for an interpreter or any communications technology.

3. State with particularity each and every measure you undertook to identify, suggest, and/or provide an accommodation for Ms. Nugent's medical condition of deafness, and identify every person involved in such steps.

4. State with particularity the monies set aside to provide accommodations to employees with disabilities from January 1, 2013 to present.

5. Identify all of the essential and marginal functions of Ms. Nugent's internship position and all listings created by Defendant of said functions whether for advertisements, postings or any other purpose from January 1, 2012 to the present.

6. Identify each and every person with knowledge of the reason(s) that Catherine Nugent's

employment was terminated and describe the substance of what each such person knows.

Respectfully submitted,

WEBSTER, FREDRICKSON, CORREIA & PUTH, PLLC

Linda M. Correia # 435027
1775 K Street, Suite 600
Washington, D.C.  20006
(202) 659-8510
Lcorreia@wfcplaw.com

Attorneys for Plaintiff

3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 24th day of February, 2014, a copy of the foregoing Plaintiff Catherine Nugent's First Set of Interrogatories to National Public Radio, Inc. was sent along with the Complaint via Certified Mail to:

National Public Radio, Inc.
c/o Beverly Davis
1111 North Capitol Street, SE
Washington, DC 20002

_____
Linda M. Correia #435027
Webster, Fredrickson, Correia & Puth P.L.L.C.
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 659-8510

Attorney for the Plaintiff