**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Catherine Nugent | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:14-cv-00416** |
| **v.** | ) | |
| | ) | |
| National Public Radio, Inc. | ) | |
| | ) | |
| **Defendant.** | ) | |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant National Public Radio, Inc. ("NPR"), by and through its undersigned counsel,

answers Plaintiff Catherine Nugent's Complaint as follows:

## PARTIES

**Paragraph 1:**  Plaintiff Catherine Nugent is an adult female resident of the State of Maryland.
Plaintiff was an employee within the meaning of D.C. Code § 2-1401.02(9) (2013).

## ANSWER:

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegation that "Catherine Nugent is an adult female resident of the State of Maryland."

Moreover, the allegation that "Plaintiff was an employee within the meaning of D.C. Code § 2-

1401.02(9) (2013)" is a legal conclusion to which no responsive pleading is required.  To the

extent a response is required, NPR denies the allegations contained in Paragraph 1.

**Paragraph 2:**  Defendant National Public Radio, Inc. ("NPR"), is authorized to conduct business
in the District of Columbia, and is an employer within the meaning of D.C. Code § 2-
1401.02(10) (2013).

**ANSWER:**

NPR admits that it is authorized to conduct business in the District of Columbia.  The

remaining allegations contained in Paragraph 2 are legal conclusions to which no responsive

pleading is required.  To the extent a response is required, NPR denies the remaining allegations

contained in Paragraph 2.

## JURISDICTION

**Paragraph 3:**  Jurisdiction is founded upon D.C. Code § 2-1403.16 (2013).

**ANSWER:**

The allegations contained in Paragraph 3 consist of legal conclusions to which no

responsive pleading is required.  To the extent a response is required, NPR denies the allegations

contained in Paragraph 3.

**Paragraph 4:**  Venue is proper as all of the acts complained of herein occurred in the District of
Columbia.

**ANSWER:**

The allegations contained in Paragraph 4 consist of legal conclusions to which no

responsive pleading is required.  To the extent a response is required, NPR denies the allegations

contained in Paragraph 4.

## FACTS GIVING RISE TO RELIEF

**Paragraph 5:**  Plaintiff is Deaf and relies upon American Sign Language (ASL) to
communicate. She is a full-time student at Gallaudet University in the District of Columbia.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 5.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 5.

**Paragraph 6:**  On or about April 16, 2013, Anjali Desai-Margolin, a career center counselor at
Gallaudet sent Plaintiff an email announcing a paid internship opportunity at NPR for a

Gallaudet student. Ms. Desai-Margolin encouraged Plaintiff to apply for the position which she promptly did on April 18, 2013. NPR knew that Plaintiff was Deaf, since it sought students from Gallaudet University which holds itself out as a leader in educating the Deaf.

**ANSWER:**

NPR admits that it provided an internship announcement to Gallaudet University in or about April, 2013 in the hopes that interested Gallaudet University students would apply.  NPR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6.  To the extent a response is required, NPR denies the remaining allegations contained in Paragraph 6.

**Paragraph 7:**  The announcement held out the following opportunity: "NPR is very interested in interviewing Gallaudet students for Communications & Marketing Internships." "The successful candidate would assist in the planning and development of activities designed to increase awareness of the Public Radio Satellite System and NPR Labs among the widest possible audience, and strengthen the image of both organizations across public radio. The intern will support the Distribution Division's Marketing Communications team. Communications, marketing, or public relations major with social media and web-development experience preferred. The ideal candidate will have a track record of successful internships with a focus on marketing and communication. Solid writing skills, knowledge of Drupal and HTML (preferred); MS Office Suite (Access, Excel, PowerPoint, and Word) are required."

**ANSWER:**

The allegations contained in Paragraph 7 purport to characterize a written document that speaks for itself and should be read as a whole.  NPR denies the allegations to the extent they do not accurately characterize the document and any remaining allegations contained in Paragraph 7.

**Paragraph 8:**  At the time the position was posted, the NPR website held out the chance for "an internship like no other." It offered that "NPR interns play a vital role in NPR's daily operations in almost every division of the organization - from NPR News and Music, to Communications and the Office of the General Counsel. Our interns work alongside experienced staff members to gain unparalleled experience in their chosen field and contribute their talents and energies to NPR's mission."

**ANSWER:**

The allegations contained in Paragraph 8 purport to characterize a written document that speaks for itself and should be read as a whole.  NPR denies the allegations to the extent they do not accurately characterize the document and any remaining allegations contained in Paragraph 8.

**Paragraph 9:**  Plaintiff is a business administration major with concentrations in marketing and human resource management. After taking a variety of classes, Plaintiff enjoyed marketing the most and hoped to develop more familiarity with marketing through the NPR internship.

**ANSWER:**

NPR admits that Plaintiff advised NPR that she was a business administration major with a concentration in human resources and marketing at the time she applied for an internship with NPR.  NPR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9.  To the extent a response is required, NPR denies the remaining allegations contained in Paragraph 9.

**Paragraph 10:**  On or about April 29, 2013, Plaintiff interviewed for the position with NPR Enterprise Strategies and Planning Manager Maryfran Tyler via telephone using a sign language interpreter, Karen Cook, the interim director of the career center at that time.  Ms. Cook was present with Plaintiff to give voice to Plaintiff's signing.  Plaintiff had been referred to Ms. Tyler by Anjali Desai-Margolin, the aforementioned career center counselor at Gallaudet.  Ms. Tyler offered Plaintiff the job during the course of the telephonic interview.

**ANSWER:**

NPR admits that on April 29, 2013, Maryfran Tyler, who was NPR's Enterprise Strategies and Planning Director at that time, interviewed Plaintiff for an internship via telephone.  NPR further admits that during the April 29, 2013 interview, Ms. Tyler offered Plaintiff an internship.  NPR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.  To the extent a response is required, NPR denies the remaining allegations contained in Paragraph 10.

**Paragraph 11:**  During the interview, Ms. Tyler told Plaintiff that she would be interning in NPR's Distribution Division.  Ms. Tyler did not mention that Plaintiff would be teaching ASL classes during the interview process.

**ANSWER:**

NPR admits that during the interview, Ms. Tyler told Plaintiff that she would be working in NPR's Distribution Division.  NPR denies the remaining allegations contained in Paragraph 11.

**Paragraph 12:**  The day after her interview, Ms. Desai-Margolin informed Plaintiff that she intended to contact the Gallaudet Public Relations department so that they could make a short film about Plaintiff's internship experience at NPR.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.  To the extent a response is required, NPR denies the allegations contained in Paragraph 12.

**Paragraph 13:**  On or about June 3, 2013, Plaintiff began work as a paid intern at NPR.

**ANSWER:**

NPR admits the allegations contained in Paragraph 13.

**Paragraph 14:**  Prior to the commencement of the internship, in an email on May 7, 2013, Ms. Tyler asked Plaintiff if she could give her (Ms. Tyler) information about the telecommunications technologies Plaintiff used to assist in communications.

**ANSWER:**

NPR admits that Ms. Tyler and Plaintiff communicated via email on May 7, 2013.  The allegations contained in Paragraph 14 purport to characterize a written document that speaks for itself and should be read as a whole.  NPR denies the allegations to the extent they do not accurately characterize the document and any remaining allegations contained in Paragraph 14.

**Paragraph 15:**  Plaintiff indicated in response that voice recognition software would be "very helpful this summer," and that video phone programming would help her with communications. Plaintiff also suggested that she would be fine working with Apple products.

**ANSWER:**

The allegations contained in Paragraph 15 purport to characterize a written document that speaks for itself and should be read as a whole.  NPR denies the allegations to the extent they do not accurately characterize the document and any remaining allegations contained in Paragraph 15.

**Paragraph 16:**  Once the internship began, Ms. Tyler gave Plaintiff an Apple iPad and said Plaintiff could use it to communicate with her and other staff by text. However, during daily meetings Ms. Tyler only talked or attempted rudimentary signs, even though Plaintiff had brought the iPad with her to facilitate communication, per Ms. Tyler's instructions. Eventually Plaintiff stopped bringing the iPad to daily meetings since it was never used. Accordingly, Plaintiff was unable to follow the discussions at these meetings without an ASL interpreter. Instead, she had to rely on the haphazard interpreting efforts of a co-intern, Lindsay Boxrud, as described more fully below.

**ANSWER:**

NPR admits the allegations in the first sentence of Paragraph 16.  NPR denies the remaining allegations contained in Paragraph 16.

**Paragraph 17:**  Plaintiff was never presented with the opportunity to utilize video phone services for incoming or outgoing calls during the internship.

**ANSWER:**

NPR denies the allegations contained in Paragraph 17.

**Paragraph 18:**  Although Defendant initially raised the possibility of voice recognition software prior to Plaintiff beginning the internship, voice recognition software was ultimately never offered by Defendant.

**ANSWER:**

NPR denies the allegations contained in Paragraph 18.

**Paragraph 19:**  NPR did not adequately facilitate day-to-day communications between NPR's "experienced staff members" and Ms. Nugent.

**ANSWER:**

NPR denies the allegations contained in Paragraph 19.

**Paragraph 20:**  Plaintiff's first day at NPR consisted of a day-long orientation for all interns, for which two ASL interpreters were provided by the Gallaudet Interpreting Service.

**ANSWER:**

     NPR admits the allegations contained in Paragraph 20.

**Paragraph 21:**  On her second day on the job, which was her first real day at her daily work location, Plaintiff did not have an ASL interpreter. Plaintiff's co-intern attempted to interpret for her during a tour of the office and for introductions to employees, but Plaintiff could only communicate through her co-intern. As discussed below, this manner of interpreting was totally inadequate.

**ANSWER:**

     NPR admits that an ASL interpreter was not present at Plaintiff's workspace on June 4,

2013.  NPR denies the remaining allegations contained in Paragraph 21.

**Paragraph 22:**  Also on her second day, Plaintiff asked in an email to Ms. Tyler if she needed to attend a brown bag lunch to which all interns had been invited, and whether an ASL interpreter would be provided. Ms. Tyler informed Plaintiff that this was not a "critical" meeting for her [*sic*] attend.

**ANSWER:**

     NPR admits that Ms. Tyler and Plaintiff communicated via email on June 4, 2013.  The

remaining allegations contained in Paragraph 22 purport to characterize written documents that

speak for themselves and should be read as a whole.  NPR denies the allegations to the extent

they do not accurately characterize the documents.

**Paragraph 23:**  On her third day, Ms. Tyler informed Plaintiff by email that ASL interpreters would only be provided at two NPR events in June. Because of a lack of daily ASL interpreting services, Plaintiff knew she would be unable to regularly interact with NPR staffers from whom she had been told she would learn.

**ANSWER:**

     NPR admits that Ms. Tyler and Plaintiff communicated via email on June 5, 2013.  The

remaining allegations contained in the first sentence of Paragraph 23 purport to characterize a

written document that speaks for itself and should be read as a whole, and NPR denies the

allegations to the extent they do not accurately characterize the document.  NPR lacks

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the second sentence of Paragraph 23.  To the extent a response is required, NPR denies the

allegations contained in the second sentence of Paragraph 23.

**Paragraph 24:**  Plaintiff was willing to try this arrangement, believing that it might work for a
"marketing position."  Plaintiff believed that if she were assigned projects to work on
independently on her computer, regular interpreter services may not be needed. However, this
was not to be the nature of Plaintiff's work for Defendant.

**ANSWER:**

        NPR denies the allegations in the third sentence of Paragraph 24.  NPR lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 24.  To the extent a response is required, NPR denies the remaining allegations

contained in Paragraph 24.

**Paragraph 25:**  Plaintiff's actual work assignments were substantially different from the
expectations Defendant created through the materials it held out to prospective interns like
Plaintiff and what was stated to her in e-mails after Plaintiff was hired.

**ANSWER:**

        NPR denies the allegations contained in Paragraph 25.

**Paragraph 26:**  Although Plaintiff believed based on NPR's representations that she would be
accruing substantive and topical subject-area experience in the fields of marketing and
communications, she learned that, instead, she would be tasked with developing lesson plans for,
and teaching, a summer-long daily ASL class for NPR staff.

**ANSWER:**

        NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 26.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 26.

**Paragraph 27:**  Plaintiff was not told that she would be doing ASL instruction until after she
had been hired, and, even then, she was initially told only that she would be "developing some"
ASL classes which Plaintiff thought would be of an informal and conversational nature.

**ANSWER:**

NPR denies the allegations contained in Paragraph 27.

**Paragraph 28:**  Plaintiff was never told that her marketing and communications internship would require her to develop a daily regimen of formal hour-long sessions to teach ASL to Ms. Tyler and other staff.

**ANSWER:**

NPR denies the allegations contained in Paragraph 28.

**Paragraph 29:**  Plaintiff has limited experience teaching ASL and is not trained or certified in ASL instruction or interpreting.  Plaintiff did not take the internship position at NPR to take on ASL teaching responsibilities.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 29.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 29.

**Paragraph 30:**  From the outset of her employment, Plaintiff was required to develop a daily regimen of formal hour-long sessions to teach ASL to Ms. Tyler and other staff.  She spent the majority of her time preparing lesson plans and teaching daily hour-long ASL classes.

**ANSWER:**

NPR denies the allegations contained in the first sentence of Paragraph 30.  NPR lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 30.  To the extent a response is required, NPR denies the remaining

allegations contained in Paragraph 30.

**Paragraph 31:**  Because she did not have an ASL interpreter and was misled about the requirements of her internship, Plaintiff quickly felt isolated and demeaned.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 31.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 31.

**Paragraph 32:**  When Plaintiff realized what her actual job would be, it became obvious that she needed an ASL interpreter every day, because she was interacting with hearing people and needed to be clearly understood.

**ANSWER:**

     NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 32.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 32.

**Paragraph 33:**  Plaintiff would never have accepted a job teaching ASL to hearing people without an ASL interpreter.

**ANSWER:**

     NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 33.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 33.

**Paragraph 34:**  NPR had hired another deaf student, Lindsay Boxrud, as an intern, and assigned Plaintiff and Ms. Boxrud to teach the ASL class together.  Ms. Boxrud does not attend Gallaudet University.  Ms. Boxrud is able to speak.  She has some hearing and does not sign in "pure ASL," but rather uses a different version of communication involving a mixed bag of signing and talking.  The difference between ASL, the recognized and official language of the Deaf in this country and Ms. Boxrud's mode of communication was such that she was periodically instructing NPR staff using incorrect signs. Without an ASL interpreter available to provide Plaintiff's corrections, Plaintiff had to sit in mute witness to Ms. Boxrud's erroneous instruction of Plaintiff's native language. These distinctions meant that NPR employees in the ASL classes looked to Ms. Boxrud for guidance, effectively eliminating Plaintiff from having any meaningful participation in the ASL class which she had been assigned to help teach.

**ANSWER:**

     NPR admits that it has had other interns, including Lindsay Boxrud.  NPR further admits

that Ms. Boxrud was not a student at Gallaudet University at the time of her internship.  NPR

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 34.  To the extent a response is required, NPR denies the

remaining allegations contained in Paragraph 34.

**Paragraph 35:**  Instead of assigning Plaintiff a certified full-time ASL interpreter, and instead of discussing the matter with Plaintiff, NPR expected Plaintiff to communicate through Ms. Boxrud.

**ANSWER:**

NPR denies the allegations contained in Paragraph 35.

**Paragraph 36:**  Ms. Boxrud inadequately communicated for Plaintiff.  Ms. Boxrud selectively decided what information to share with Plaintiff and did not relay Plaintiff's complete responses back to the staff.  Ms. Boxrud was not an ASL interpreter.  As mentioned above, on many occasions, Ms. Boxrud used incorrect ASL signs for words.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 36.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 36.

**Paragraph 37:**  Rather than being an ASL interpreter, Plaintiff uses the term "screener" to describe the way that Ms. Boxrud inadequately facilitated and selectively filtered communications and interactions between Plaintiff and other NPR staff.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 37.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 37.

**Paragraph 38:**  If NPR had not refused to provide Plaintiff with appropriate ASL interpreter services as Plaintiff obviously needed, Plaintiff would not have been forced to accept Ms. Boxrud's role as her screener.

**ANSWER:**

NPR denies the allegations contained in Paragraph 38.

**Paragraph 39:**  Plaintiffs isolation was complete when on or about June 12, 2013, Ms. Tyler asked Ms. Boxrud to take two ASL interpreters from Gallaudet on a tour of the new NPR offices. Ms. Boxrud did not invite Plaintiff, leaving her alone at her desk even though the ASL interpreters were on site specifically to serve Plaintiff's communication needs.

**ANSWER:**

NPR denies the allegations contained in Paragraph 39.

**Paragraph 40:**  Plaintiff was not provided with an ASL interpreter for brown bag lunches, ASL classes she was teaching, staff meetings, meetings with her supervisor, or day-to-day interactions with staff.

**ANSWER:**

NPR denies the allegations contained in Paragraph 40.

**Paragraph 41:**  Regarding Plaintiff's access to ASL interpreters, NPR set clear expectations at the beginning of the internship.  Plaintiff asked about an ASL interpreter during her second day on the job, and was informed that because Ms. Tyler did not believe that the meeting about which Plaintiff had inquired was "critical," Plaintiff would effectively be excluded from participation.  At the outset of her internship, then, Ms. Tyler communicated to Plaintiff that no ASL interpreters would be available to her, unless she was to be attending what Ms. Tyler deemed to be a "critical meeting."

**ANSWER:**

NPR denies the allegations contained in Paragraph 41.

**Paragraph 42:**  On or about June 11, 2013, Ms. Tyler informed Plaintiff that Gallaudet would be coming to NPR soon to film Plaintiff working at NPR.  Ms. Tyler also informed Plaintiff and Ms. Boxrud that Ability Magazine, a publication for the disabled community, would be coming to NPR to interview them for a story on their internship experience.

**ANSWER:**

NPR denies the allegations contained in Paragraph 42.

**Paragraph 43:**  Plaintiff's internship coincided with NPR's efforts to promote its "Breaking the Sound Barrier" project, an effort to bring captioned radio programs to the attention of the Deaf community.

**ANSWER:**

NPR admits that it has a project entitled "Breaking the Sound Barrier."  NPR denies the

remaining the allegations contained in Paragraph 43.

**Paragraph 44:**  Plaintiff came to understand that NPR's primary reason for employing Plaintiff was to assist in its public relations strategy to build enthusiasm in the media for its new outreach programming targeting Deaf persons. NPR failed to meet its legal obligations in focusing almost exclusively on this purpose for employing Plaintiff, to Plaintiff's detriment.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the first sentence of Paragraph 44.  To the extent a response is required,

NPR denies the allegations contained in the first sentence of Paragraph 44.  The remaining

allegations contained in Paragraph 44 consist of legal conclusions to which no responsive

pleading is required.  To the extent a response is required, NPR denies the remaining allegations

contained in Paragraph 44.

**Paragraph 45:**  On or about June 13, 2013, Plaintiff's parents reached out to Ms. Tyler to voice
Plaintiff's complaints as articulated above, because it was clear that Plaintiff could not
communicate with Ms. Tyler without the assistance of Ms. Boxrud, and that Plaintiff had been
misled about the purposes of her employment.

**ANSWER:**

NPR admits that Plaintiff's parents sent an email to Ms. Tyler on June 13, 2013.  NPR

denies the remaining allegations in Paragraph 45.

**Paragraph 46:**  On or about June 14, 2013, Ms. Tyler terminated Plaintiff's employment with
NPR following the email exchange with Plaintiff's parents.

**ANSWER:**

NPR admits that Ms. Tyler terminated Plaintiff's internship with NPR on or about June

14, 2013.  NPR denies the remaining allegations in Paragraph 46.

**Paragraph 47:**  When Plaintiff's parents explained that Plaintiff wanted to keep her job, an NPR
human resources representative emailed Plaintiff's parents and said that NPR would "stand by
the decision" to terminate Plaintiff.

**ANSWER:**

NPR admits that an NPR Human Resources staff member sent an email to Plaintiff's

parents on June 17, 2013.  The allegations contained in Paragraph 47 purport to characterize

written documents that speak for themselves and should be read as a whole.  NPR denies the

allegations to the extent they do not accurately characterize the documents and any remaining allegations contained in Paragraph 47.

**Paragraph 48:**  Plaintiff had previously interviewed for a paid summer internship position at the Finance Office of Gallaudet University, and had received an offer for that position. Plaintiff passed up that offer in favor of the NPR internship. On or about June 19, 2013, Plaintiff contacted the Internship Coordinator at Gallaudet's undergraduate Business School to see if other summer internship opportunities were available. In response, Plaintiff was informed that all such opportunities had been filled.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48.  To the extent a response is required, NPR denies the allegations contained in Paragraph 48.

**Paragraph 49:**  As part of her degree requirements, Plaintiff must serve in a business-related internship of at least ten (10) hours per week for at least 10 weeks. The loss of the NPR internship has hampered Plaintiff's progress toward the timely attainment of her diploma.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.  To the extent a response is required, NPR denies the allegations contained in Paragraph 49.

## COUNT I
### (Failure to accommodate disability in violation of the District of Columbia Human Rights Act)

**Paragraph 50:**  Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-49 of this Complaint with the same force and vigor as if set out here in full.

**ANSWER:**

NPR incorporates and relies upon the responses stated in Paragraphs 1-49 of the Answer as if same were fully restated in the Answer to Count I.

**Paragraph 51:**  Plaintiff is Deaf.

14

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 51.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 51.

**Paragraph 52:**  Plaintiff was qualified to perform the essential functions of an internship
position with Defendant with the reasonable accommodation of daily interpreter services.

**ANSWER:**

The allegations contained in Paragraph 52 consist of legal conclusions to which no

responsive pleading is required.  To the extent a response is required, NPR denies the allegations

contained in Paragraph 52.

**Paragraph 53:**  Defendant was aware that Plaintiff was Deaf since it recruited her from a
college for persons who are deaf.  Defendant also was aware that Plaintiff was Deaf since it
interviewed her for the position via telephone with a sign language interpreter who was present
to give voice to Plaintiff's signing.  Plaintiff's needs were obvious before she was hired, *see
McCoy v. Texas Dept. of Criminal Justice*, No. C-05-370, 2006 U.S. Dist. LEXIS 55403, 2006
WL 2331055, *7-9 (S.D. Tex. Aug. 9, 2006).

**ANSWER:**

NPR denies the allegations contained in Paragraph 53.

**Paragraph 54:**  Plaintiff also requested an interpreter as an accommodation on her second day
on the job.

**ANSWER:**

NPR denies the allegations contained in Paragraph 54.

**Paragraph 55:**  Plaintiff's request for accommodation was denied.

**ANSWER:**

NPR denies the allegations contained in Paragraph 55.

**Paragraph 56:**  Defendants failed to reasonably accommodate Plaintiffs disability, deafness, in
violation of D.C. Code § 2-1402.11 of the District of Columbia Human Rights Act, D.C. Code
§§ 2-1401.01 - 1411.06 (2001).

**ANSWER:**

The allegations contained in Paragraph 56 consist of legal conclusions to which no

responsive pleading is required.  To the extent a response is required, NPR denies the allegations

contained in Paragraph 56.

**Paragraph 57:**  As a direct and proximate result of these unlawful acts by Defendants, Plaintiff
has suffered lost wages, benefits and entitlements, and has suffered and continues to suffer
humiliation and emotional distress.

**ANSWER:**

NPR denies the allegations contained in Paragraph 57.

## COUNT II
### (Negligent misrepresentation)

**Paragraph 58:**  Plaintiff incorporates by reference and re-alleges each of the allegations
contained in paragraphs 1-49 of this Complaint with the same force and vigor as if set out here in
full.

**ANSWER:**

NPR incorporates and relies upon the responses stated in Paragraphs 1-57 of the Answer

as if same were fully restated in the Answer to Count II.

**Paragraph 59:**  Defendant NPR negligently communicated false information about its internship
program to Plaintiff, to wit, Defendant held out its internship program as an experiential learning
opportunity in the area of marketing and communications, where it instead actually intended to
have Plaintiff instruct NPR employees in ASL and serve as a component of its media outreach
strategy.

**ANSWER:**

NPR denies the allegations contained in Paragraph 59.

**Paragraph 60:**  Defendant should have recognized that Plaintiff would likely be harmed by
relying on Defendant's misrepresentation.

**ANSWER:**

NPR denies the allegations contained in Paragraph 60.

**Paragraph 61:**  By choosing to apply for the position based on the false information in NPR's internship solicitations, and subsequently accepting the position based on additional misrepresentations made by Ms. Tyler, Plaintiff reasonably relied upon the false information.

**ANSWER:**

NPR lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 61.  To the extent a response is required, NPR denies the

allegations contained in Paragraph 61.

**Paragraph 62:**  Plaintiff was harmed by her reliance on this false information as articulated above.

**ANSWER:**

NPR denies the allegations contained in Paragraph 62.

**Paragraph 63:**  As a direct and proximate result of these unlawful acts by Defendants, Plaintiff has suffered lost wages, benefits and entitlements, and has suffered and continues to suffer humiliation and emotional distress.

**ANSWER:**

NPR denies the allegations contained in Paragraph 63.


WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

1.      Enter judgment on her behalf against National Public Radio, Inc., on all counts contained herein;

2.      Award Plaintiff compensatory and other damages;

3.      Award back pay to Plaintiff;

4.      Award punitive damages to Plaintiff;

5.      Award Plaintiff her court costs, expenses, attorneys' fees, prejudgment interest, and post-judgment interest;

6.      Declare that Defendants' conduct is in violation of the District of Columbia Code §§ 2-1401.01 - 1411.06 (2013);

7.      Declare the Defendants' conduct negligent misrepresentation; and

8.      Grant such other and further relief as this Court deems just and proper.

**ANSWER:**

NPR denies all the allegations and assertions contained in Plaintiff's request for relief and denies that Plaintiff is entitled to any relief whatsoever, including any of the relief sought in Paragraphs 1-8 of the Prayer for Relief.

## JURY DEMAND

Plaintiff demands a jury on all issues contained herein.

**ANSWER:**

NPR denies that Plaintiff is entitled to a trial by jury.

## GENERAL DENIAL

NPR denies each and every allegation contained in the Complaint that is not specifically admitted herein.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.      NPR denies that disability or any other impermissible factor played any role in the employment decisions related to Plaintiff.  Alternatively, even if some impermissible motive had been a factor in any of those decisions, the same decisions would have been reached for legitimate, nondiscriminatory reasons.

3.      Plaintiff's claims are barred in whole or in part by the equitable doctrines of waiver, estoppel, and laches.

4.      Plaintiff's claims should be dismissed because the challenged decisions are justified by legitimate, non-discriminatory, and non-pretextual reasons and were based upon reasonable factors other than Plaintiff's disability.

5.      Plaintiff's claims should be dismissed because Plaintiff did not request reasonable accommodation(s).

6.      At all times relevant to this action, NPR has had in place a clear and well disseminated policy against discrimination, harassment, or other inappropriate conduct, on the basis of disability or other protected classifications, and a reasonable and available procedure for handling complaints, which provides for prompt and effective responsive action.

7.      Plaintiff unreasonably failed to take advantage of NPR's clear and well disseminated policy against harassment, discrimination, or other inappropriate conduct, on the basis of disability or other protected classifications, and a reasonable and available procedure for handling complaints, which provides for prompt and effective responsive action.

8.      If any improper, illegal, or discriminatory acts were taken by an employee of NPR against Plaintiff, it was outside the course and scope of that employee's employment, or an independent, intervening and or unforeseeable act, contrary to NPR's policies, and was not ratified, confirmed, or approved by NPR.  Thus any such actions cannot be attributed or imputed to NPR.

9.      NPR has made a good faith effort to comply with anti-discrimination laws and has not engaged in any alleged conduct with malice or reckless indifference to the protected rights of Plaintiff, thus Plaintiff is not entitled to punitive damages.

10.     Damages sought by Plaintiff are barred or diminished to the extent she failed to mitigate her damages.

11.     Any emotional distress suffered by Plaintiff was not caused by Defendant or by its agents.

12.     Plaintiff is not entitled, on the law or the facts, to any of the damages that she claims.

13.     NPR reserves the right to assert additional defenses or affirmative defenses as established by the facts of the case.

Dated: March 24, 2014                    By: /s/Lincoln O. Bisbee_____
                                              Joseph E. Santucci
                                              Lincoln O. Bisbee
                                              Abbey M. Glenn
                                              MORGAN, LEWIS & BOCKIUS LLP
                                              1111 Pennsylvania Avenue, NW
                                              Washington, DC  20004
                                              Telephone:  202.739.3000
                                              Facsimile:  202.739.3001
                                              jsantucci@morganlewis.com
                                              lbisbee@morganlewis.com
                                              aglenn@morganlewis.com

                                              *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that on March 24, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to counsel for all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>/s/ Lincoln O. Bisbee</u>
Lincoln O. Bisbee
